### HEARD NOVEMBER TERM, 1875.

### LEVY *vs.* BARRETT.

Testator having eight children, of whom his son I. and his daughter L. were two, makes his will and afterwards a codicil thereto, whereby, after various devises and bequests, and a declaration that his son I. would receive no part of his estate, he gives to his daughter L. "the same portion of my estate which my son I. would have received had this exception not been made," and then devises and bequeaths the residue of his estate to his executors in trust for the benefit of his children, and directs that the final distribution of his estate amongst his surviving children and the issue of such as may then be dead shall not be made until ten years after his death. I. died in the lifetime of the testator, after the codicil was made: *Held*, That L. was entitled, in the final distribution of the residue, to two eighth parts.

BEFORE REED, J., AT CHARLESTON, APRIL, 1875.

This was an action by Charles F. Levy and Laura L., his wife, and others against the executors of Jacob Barrett, deceased, and others, to obtain, amongst other things, the judgment of the Court as to the construction of the will of the testator upon the claim of the plaintiff, Laura L. Levy, one of the daughters of the testator.

The testator, when his will and codicil were made, had eight children, his daughter, Laura L. Levy, and his son, Isaac Barrett, being two of them. Isaac died in the lifetime of his father. The others survived him, and they and their children, with the husbands of such of the females as were married, were parties to the action either as plaintiffs or defendants.

The will and codicil are as follows:

### WILL.

"In the name of God, amen. I, Jacob Barrett, of Charleston, State of South Carolina, do make and declare this to be my last

will and testament. I give, devise and bequeath to my daughter Laura my three (3) houses and lots at corner of Anson and Hasel streets, and on Anson street, all being one lot; also the brick house on State street, corner of Unity alley; also the sum of $5,000, being amount already received by said Laura and her husband for insurance of a building on Broad street, in Charleston, and also the lot on which the said building stood; the property given to my said daughter Laura to be charged against her in the distribution of my estate at the sum of eighteen thousand five hundred dollars ($18,500).

"I give, devise and bequeath to my daughter Sarah the house and lot on East Bay, formerly known as the French Coffee House, to be charged against my daughter Sarah in the distribution of my estate at the sum of twenty-five thousand dollars ($25,000).

"I give, devise and bequeath to my daughter Pauline my brick house and lot in New York, situated on Thirty-sixth street, between Sixth and Seventh avenues, to be charged against my daughter Pauline in the distribution of my estate at the sum of sixteen thousand dollars ($16,000).

"I give, devise and bequeath to my daughter Eugenia Amanda my two houses and lots in Brooklyn, New York, situated in Second Place, to be charged against her in the distribution of my estate at the sum of twenty thousand dollars ($20,000).

"I give, devise and bequeath to my daughter Mary Beatrice my other two houses in Brooklyn, situated in Second Place, also to be charged against my daughter Mary Beatrice in the distribution of my estate at the sum of twenty thousand dollars ($20,000).

"And whereas, from special reasons, my son Isaac will not receive any portion of my estate, and his sister Laura having always extended to him much attention and kindness, I believe that it will be gratifying to him that I should make some extra provision for my daughter Laura. In consideration of such kindness and attentions, I hereby give, devise and bequeath to my daughter Laura the same portion of my estate as would have been bequeathed to my son Isaac, had this exception not been made. And I hereby authorize my executors to this my last will and testament, immediately after my death, to give my brick house and lot on East Bay, and known as one of the Prioleau Range, to my daughter Laura, in consideration of her kindness to her brother Isaac, and to be charged against my daughter Laura in the final distribution of my estate out of the portions which would have been bequeathed to my son Isaac at the

sum of fifteen thousand dollars ($15,000). And it is my will and desire that, in consideration of this bequest, my daughter Laura will continue to extend to her brother the same kindness; to give him a comfortable support; pay all his expenses of clothing, boarding and lodging, doctor's bills, etc., while he lives single and with her; but should my son Isaac marry with the consent and approval of his mother, then his wife and children to receive for their support and maintenance the same portion of the income of my estate as my other children, and ten thousand dollars ($10,000) to be appropriated to my daughter Laura for the benefit of herself and her children. Should my son die and leave no child or children, then his wife to receive the interest of $10,000 for her support and maintenance during her widowhood, and the remaining interest of this portion to go to my daughter Laura, for the benefit of herself and her children.

"I give, devise and bequeath to my- son Jacob my brick house, Vendue Range; also my house and lot on East Bay corner of Unity alley, and my brick house on East Bay, formerly occupied by Hyams, to be charged against my son in the distribution of my estate at the sum of fourteen thousand dollars ($14,000).

"I give, devise and bequeath to my son Solomon, Star Plantation, in Washington County, Georgia; also my house and lot in the town in Linton, Georgia, and a tract of land in Glynn County, also in the State of Georgia, and known as Carbright, to be charged against my son Solomon in the distribution of my estate at the sum of six thousand dollars ($6,000).

"I give, devise and bequeath to my beloved wife Hetty Barrett the sum of four thousand dollars per annum, to be paid to her by my executors in such monthly or quarterly instalments as may be best suited to her wants, as it is my wish to fully secure to my beloved wife a maintenance in accordance with the manner in which she has lived during my own lifetime. I desire that the amount herein set apart for her maintenance and support be paid to her out of a sum necessary to secure to her that amount. It is my will and desire, that upon the death of my wife, the property devoted to her uses during her lifetime shall revert back to my estate, and be distributable under the provisions of my will respecting the residue of my estate. It is further my will that my executors, hereafter named, in this my will, shall set apart out of my estate the sum of fifty thousand dollars ($50,000) of my best securities, and in like manner invest all the accruing interest on

the same in good, safe securities, and its increases during the life of my wife; and she shall be fully authorized and empowered, by her last will and testament, to dispose of the same fund at her discretion, giving the same and all of its accumulations to one or more of my children or grandchildren, to the exclusion of any or all of the others, and in such shares as she may think proper. It is further my will and desire that the property given to my children under this my will, whether it be property specially devised or a part of the residue, shall be held by them for and during their natural lives respectively; the property devised to each of my daughters to be received by her, and held by her, for her sole and exclusive use and behoof, free from all debts and encumbrances, contracts or engagements of their present or any future husbands; and after the death of any of my children, the income of the payments devised to such child or children shall be applied to such child or children surviving them for their maintenance and support. It is my further will and desire that should any of my children depart this life leaving no child or children surviving him or her, or should the child or children left surviving by any of my children departing this life shall so depart this life before attaining the age of twenty-one (21) years or marriage, the property devised to such child or children shall revert to my estate, and shall become devisable as a part of my estate, and subject to the same conditions as the residue of my estate. It is my will and desire that my executors shall set apart, out of my estate, the sum of ten thousand dollars ($10,000) of the State of Georgia, city of Columbus, bonds of the longest date, for the following purposes, viz.: The sum of five thousand dollars ($5,000) I devise and bequeath to the congregation, Hasel street, to be held by the trustees of that synagogue, and the interest of said five thousand dollars ($5,000) annually to go towards the payment of the minister of said congregation; I devise and bequeath the other five thousand dollars ($5,000) to the Hebrew Orphan Society, Broad street, Court House Square, to be held by the trustees of that institute, and the interest of that amount to be used by said trustees in furthering the objects of that society. All the rest and residue of my estate, both real and personal, of whatsoever character and kind, I leave in trust to my executors, hereafter named in this my last will and testament, for the benefit of my children and grandchildren; the interest of all such property to be invested in safe securities, and

kept together until twenty (20) years after my death; then, at that time, it is my will and desire that the final division of my estate shall take place, according to the tenor and meaning of this my last will, among my surviving children, the child or children of either of my children who may have departed this life previous to this distribution standing in the place of such deceased parent. I hereby appoint George W. Williams, H. H. DeLeon, Charles T. Lowndes, W. B. Smith, W. C. Bee, executors of this my last will.

"In witness whereof I have hereto set my hand and seal this 21st day of September, 1870."

## CODICIL.

"I, Jacob Barrett, do hereby declare this to be a codicil to my last will and testament. I do hereby revoke so much of my within contained will as devises and bequeaths to my daughter Laura my brick house and lot on East Bay, and known as one of the Prioleau Range, and direct the same to be held as therein directed, according to the residue of my estate.

"I do further direct that the final division of my estate shall take place among my surviving children at the period of ten years after my death, instead of twenty years, as specified in my said will, and that at such time the amounts devised to my children be first equalized and the residue divided as therein directed. I do further direct that the portions of my estate left to all of my children shall be subject to the following trusts, to wit: In trust to them for life, and after their death to such children as they may leave surviving, the child or children of any deceased child to take such share as his, her or their parent would have taken if alive; and in case there should be no such child or children, grand-child or grand-children, then the same to revert to my estate and become devisable as a part of the residue of my estate, hereby revoking such portions of my will as may be inconsistent with this codicil, but confirming the said will in all other respects.

"Witness my hand and seal this 10th day of January, Anno Domini 1871."

The case was referred to G. Lamb Buist, Esq., who made the following report:

This case was referred to me on the 11th day of November, 1873, by the Honorable R. F. Graham, Judge of the First Circuit, by virtue of an order in the words following, to wit: "The decree hitherto made in this cause having been set aside, and the cause remanded for further proceeding, on motion of R. S. Duryea, attorney for the infant defendants, and on hearing J. Barrett Cohen and James B. Campbell, (attorneys of Charles F. Levy and wife, Joseph Cohen and wife, Bushrod F. Rice and wife, Michael W. Larendon and wife, Solomon J. Barrett and wife and Jacob Barrett,) and Porter & Conner, (attorneys of Daniel Dishon and wife,) and R. S. Duryea, (attorney of Mrs. H. J. Barrett,) and Simons & Seigling, (attorneys of the executors of Jacob Barrett,) it is ordered that this case be referred to G. Lamb Buist, Esq., as Special Referee, to take testimony and report the same, and more especially to take testimony as to the situation of the estate and the circumstances affecting the various parties, particularly the infants, entitled under the will; also as to the condition of the families of the children of the late Jacob Barrett, and the necessity or propriety of allowing maintenance; also the propriety of allowing the interest for the nurture, support and education of the families of the said the children of the said Jacob Barrett; also to take testimony on any other matter arising under the pleadings which may be brought before him, with leave to report any special matter."

I have been attended by all the solicitors in the case, and taken at several references the testimony submitted with this report.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

The other question presented for my consideration is as to the construction to be placed on the will of the testator as to the claim of Mrs. Laura Levy, one of the daughters of the testator.

It is contended on her behalf that she is entitled to two-eighths part of the estate of the testator, being her own share or portion and that of her brother Isaac.

The will provides as follows: "And whereas, from special reasons, my son Isaac will not receive any portion of my estate, and his sister Laura having always extended to him much attention and kindness I believe that it will be gratifying to him that I should make some extra provision for my daughter Laura; in consideration of such kindness and attention I hereby give, devise and bequeath to my daughter Laura the same portion of my estate as would have been bequeathed to my son Isaac had this exception

not been made. And I hereby authorize my executors to this my last will and testament, immediately after my death, to give my brick house and lot on East Bay, and known as one of the Prioleau Range, to my daughter Laura in consideration of her kindness to her brother Isaac, and to be charged against my daughter in the final distribution of my estate, out of the portion which would have been bequeathed to my son Isaac, at the sum of $15,000; and it is my will and desire that in consideration of this bequest my daughter Laura will continue to extend to her brother the same kindness, to give him a comfortable support, pay all his expenses of clothing, boarding and lodging, doctors' bills, etc., while he lives single; but should my son Isaac marry, with the consent and approval of his mother, then his wife and children to receive for their support and maintenance the same portion of the income of my estate as my other children, and $10,000 to be appropriated to my daughter Laura, for the benefit of herself and her children. Should my son die and leave no child or children, then his wife to receive the interest of $10,000 for her support and maintenance during her widowhood, *and the remaining interest of this portion to go to my daughter Laura, for the benefit of herself and her children.*"

The testator in his will further directs that the final division of his estate shall take place, according to the tenor and meaning of this his last will, among his surviving children, etc., and in his codicil he provides as follows, to wit: "I do hereby revoke so much of my within contained will as devises and bequeaths to my daughter Laura my brick house and lot on East Bay, and known as one of the Prioleau Range, and direct the same to be held as therein directed according to the residue of my estate." The will is dated 21st September, 1870; the codicil 10th January, 1871. And Isaac Barrett died prior to testator on September 9th, 1871, unmarried, and without issue.

I have given this question the most careful consideration, with a view to the determination of the proper construction to be placed on the testator's will; and to arrive at a proper conclusion, it is necessary to consider, first, the interest to which Mrs. Levy would be entitled had Mr. Isaac Barrett survived his father; and, secondly, whether, under the terms of the will, in consequence of his decease, she no longer can lay claim to his share or portion.

And, first, I am of opinion that had Isaac survived his father and remained unmarried, Mrs. Levy would have received, in the

language of the will, "the same portion of my estate as would have been bequeathed to my son Isaac had this exception not been .made," which exception was made in the following words: "And whereas, from special reasons, my son Isaac will not receive any portion of my estate, and his sister Laura having extended to him much attention and kindness," etc. It is a reasonable and natural conclusion that if testator had no special reasons or made no exception to Isaac, his share would have been the same as that of the other children, and this results from the provision that, in the event of the marriage of Isaac, his wife and children should receive for their support and maintenance *the same portion of the income of his estate as his other children*, and $10,000 to be appropriated to his daughter Laura, for the benefit of herself and children; and should his son die and leave no children, that his wife should receive the interest of $10,000 for her support and maintenance during her widowhood, and the remaining interest of this portion should go to his daughter Laura, for the benefit of herself and her children. In the codicil, the testator only revokes *so much* of his will as devises and bequeaths to Mrs. Levy his house and lot on East Bay, and the same goes into his residuary estate. He further changes the period of distribution from twenty to ten years, and recites trusts upon which these are to be held.

I cannot perceive in the will wherein Isaac Barrett was named as a legatee of testator; for special reasons he was excluded; and for kindness already extended, the share he would have received but for the special reasons was bequeathed to Mrs. Levy, subject to certain modifications, should the contingency arise of marriage of Isaac, with the consent and approval of his mother.

Having construed the intention of testator in his will on this point to be:

1. That for special reasons Isaac was to receive no share;

2. That to his sister Laura there was devised his share or portion to which the other children were entitled; and,

3. That the contingency of his marriage did not arise to vary the nature of Mrs. Levy's interest;

I am of the opinion that the decease of Isaac prior to testator has no effect upon Mrs. Levy's interest to the one-eighth share, and she is, in my judgment, entitled under the terms of the will to the same.

Some of the parties excepted to so much of the report as holds that Mrs. Laura L. Levy is entitled to two-eighths under the will of Mr. Jacob Barrett, instead of one-seventh, and that each of the other children is entitled to but one-eighth, instead of one-seventh, on the following grounds:

1. Because, even if the said Referee had power to report on a question of law, his construction of the said will is incorrect, inasmuch as Mr. Barrett made no devise, bequest or gift to his son Isaac except the Prioleau Range property, which gift was revoked by his codicil.

2. Because Isaac having died before his father, and subsequently to the making of the will and codicil, all legacies which might have been given to him lapsed, and if any person was to take what he would have taken,—to use the words of the will, "had this exception not been made,"—it could only be under such condition of things as must have existed had he been in a position to have a portion of the estate bequeathed to him.

3. Because if Isaac had lived and remained unmarried, Laura L. Levy would have taken nothing under the will except the Prioleau Range property, which was revoked by the codicil.

4. Because the words used in the will under which it is claimed that Laura L. Levy is entitled to two shares, except so far as the Prioleau Range property is concerned, would, if Isaac were alive and unmarried, be void for uncertainty.

5. Because after the purchase of the Wentworth street house for Mrs. Levy by Mr. Barrett, which title was placed in evidence by Mrs. Levy, and prior to the death of Isaac, the testator, by his codicil, revoked the gift of the Prioleau Range property, and declared that the property left to ALL of his children should be divided as directed under his will, to wit, among his SURVIVING CHILDREN.

6. Because a will speaks from the death of a testator, and at the time of the death of Mr. Jacob Barrett, Isaac was dead and could have taken no portion.

7. Because, under the provisions of the will and codicil, Laura was entitled to no more than an equal share with the other surviving children of the testator.

The decree of His Honor is as follows:

REED, J. This case was heard upon the report of the Referee,

and exceptions to the same on the part of all the plaintiffs, except-ing only Charles F. Levy and Laura L., his wife, and all of the infant defendants, excepting only the children of Mrs. Laura L. Levy.

The questions raised were, first, can any portion of the income of the estate, which is large, be applied to the education and mainten-ance of the children of the testator and their issue, who are the ultimate devisees, and who are shown to be in extremely destitute circumstances prior to the period fixed for the final distribution of the estate, which, under the codicil, is not to be made until ten years after the death of the testator. The Referee has decided this ques-tion in the affirmative, and recommends that five thousand dollars of the income be applied annually to their use.

To this finding there is no exception, and, concurring in the justice and necessity of the application, the report of the Referee on this subject is confirmed.

The other question, and the one on which the report of the Re-feree is excepted to, is what portion of the estate Mrs. Laura L. Levy is entitled to under the will of her father, the testator?

If the Referee is correct in his conclusions, she is entitled to two-eighths of the estate, and each of her brothers and sisters to one-eighth; that is to say, she would take for life, and her children after her death, double the estate that would be taken by each of her brothers and sisters. If, on the other hand, the Referee is wrong, then Laura (Mrs. Levy) would take the same estate under her father's will as each of her brothers and sisters; that is to say, each would take one-seventh under the limitations of the will.

The testator left surviving him his widow, Mrs. Hetty J. Barrett, and seven children, to wit: Laura (Mrs. Levy,) Sarah (Mrs. Joseph Cohen,) Pauline (Mrs. Dishon,) Eugenia Amanda (Mrs. Rice,) Mary Beatrice (Mrs. Larendon,) and Jacob Barrett and Solomon Barrett.

Isaac Barrett died before his father.

The scheme of the will, aside from the liberal provisions made for the wife, a part of which was in any event to fall into the resi-due, and the remaining portion also into the residue, if not disposed of by will in her lifetime, seems to have been to equalize his chil-dren, beginning by dividing among them so much of the estate as it was intended should be possessed and enjoyed by them immedi-ately after the testator's death, into eight specific shares, of unequal

value, postponing the possession of the residue, which was much the largest portion, until twenty years after the testator's death, according to the will, which period was altered by the codicil to ten years, which said codicil also revoked the devise of the Prioleau Range property, and directed that the same should be held as a portion of the residuary estate.

In these specific and ultimate divisions does Mrs. Levy take one share in her own right, or is she entitled to two-eighths, one-eighth in her own right, and one-eighth in the right of her brother Isaac?

The language used to express the will of the testator on this subject of Isaac's share is greatly confused, and, if it can be construed at all, is susceptible of several constructions of about equal probability.

The theory adopted by the Referee has been elaborately and ably urged by the counsel representing Mrs. Levy. On the other hand, counsel representing the remaining devisees and legatees insist that such a construction is utterly fallacious, and that the whole tenor of the will necessarily limits Mrs. Levy to her own seventh of the estate, or else its terms in regard to this matter are incomprehensible and must be rejected as void for uncertainty. I concur with the counsel who have reached the last named results, but I have arrived at my conclusions by an entirely different course of reasoning.

According to my view, it was the intention of the testator to make specific allotments of certain property to each of his children, excepting Isaac, to be enjoyed by them immediately after his decease, and to give the remainder of his estate to his executors, in trust, for the use of his children whilst they lived, but to be divided, with its accumulations, among the survivors of them twenty years after his decease.

For reasons that were known to himself, he excepts his son Isaac from this specific division; indeed he did not regard himself as disposing of any other property directly to his children, and gave the specific property that would have been given to him, " had this exception not been made," to his sister Laura, believing it would be gratifying to him, (Isaac,) and in consideration of the kindness and attention rendered and to be rendered to him by his sister. That portion was the brick house and lot on East Bay, known as one of the Prioleau Range, and charged in the final distribution of his estate out of the portion which would have been bequeathed

to his son Isaac at the sum of fifteen thousand dollars; and this was given, not only in consideration of past kindness and attention, but also in trust, that her good offices should be continued towards her brother whilst he remained single and lived with her; but, if he married, then his family, who would become his protectors, was to receive the same "income" (portion) of the estate as testator's other children, including, as he supposed and intended, the Prioleau Range property; and, in that event, Laura was to be relieved of her trust, and to receive ten thousand dollars for all services rendered to her brother.

Isaac never married, and died before his father, the testator.

The will was executed on the 21st September, 1870, and, afterwards, in December of the same year, testator purchased for his daughter Laura, at a cash cost of eight thousand five hundred dollars, a house and lot in Wentworth street, the conveyance of which was dated December 1st, and recorded on the 20th December.

On January 10, 1871, but twelve days after the deed was recorded, testator made a codicil to his will, revoking the devise of the Prioleau Range property. The value of the house and lot on Wentworth street was thus taken out of the residuary estate, and the Prioleau Range property added to the residue, for the double purpose, as I take it, of increasing the residue for ultimate division among his surviving children, and for the purpose of fixing and paying to Laura a cash compensation for services rendered and to be rendered to her brother Isaac, or, as the testator calls it, "kindness and attention."

If this view be correct, it follows that Mrs. Levy is limited to an equal share with her brothers and sisters in the final settlement of the estate, and cannot take two-eighths, as contended for. Is it correct? Taking these words; "for special reasons, my son Isaac will not receive any portion of my estate," found at the beginning of the clause of the will on this subject, as also some isolated expressions of similar import in the body of the clause, the construction might seem strained; but, upon an examination of the whole instrument, the number and condition of testator's family, his object in disposing of his property by will, as illustrated by his vesting the bulk of it in the hands of certain eminent bankers as trustees, for a long term of years; the reasons, as gathered from the paper itself, which may be supposed to have actuated him in its execution,

the terms of the codicil, whereby it is directed that a final division of his estate among his "surviving children" shall be made at the end of ten, instead of twenty years, "the amounts devised" to his children, being "first equalized;" the fact that Isaac was one of his children, and, if he had survived to that time, would have taken his share of the residue, either in his own right or as *cestui que trust* of his sister Laura, render this construction, as I think, not only the most reasonable that can be suggested, but in perfect accord with the intention of the testator.

If I am right, and, whether right or not, it resolves the very grave doubts that exist in favor of the justice and equity of the case ; and if wrong, then I think the paper cannot be intelligently construed, so far as any interest, either in or through Isaac, is concerned, and is therefore void for uncertainty.

Either view will accomplish what nature, as well as his declaration, suggests testator must have intended to do for his children—put them on an equality.

It is therefore ordered, adjudged and decreed that so much of the report of the Referee as sets out that Mrs. Laura L. Levy is entitled to two-eighths in the final distribution of the estate of the testator, Jacob Barrett, is overruled; and it is further ordered, adjudged and decreed that the said Laura L. Levy is only entitled on such final settlement to take one child's part of the residue, and no more.

It is further ordered, adjudged and decreed that the executors of Jacob Barrett do pay the children of the said Jacob Barrett, the plaintiffs in this cause, the sum of $5,000 per annum, to be equally divided among them, from the date of the death of the said Jacob Barrett, and that they continue to pay the same amount annually in the manner above directed, until the period of final distribution of the estate, and that said amount be applied to the support and maintenance of the plaintiffs and of their children.

It is further ordered that the costs of these proceedings be paid by the estate.

It is further ordered that any party to these proceedings have leave to apply, at the foot of this decree, for such further order or decree as may be necessary in the premises.

The plaintiffs, Charles F. Levy and Laura L., his wife, for

themselves and in behalf of their children, appealed from so much of the decree as sustained the exceptions to the report.

*Campbell,* for appellants.

*Cohen, Porter & Brawley,* contra.

February 17, 1876. The opinion of the Court was delivered by

WILLARD, A. J. The construction of the present will does not involve the interpretation of obscure or doubtful expressions.. The will is carefully and clearly drawn, and the mind of the testator, as expressed, is in harmony with itself, both as it regards the general objects and motives that influenced him and the particular considerations that lead to special provision for his daughter Laura; it is in harmony both as it regards the ends sought to be attained and the means employed for their attainment. The true construction, therefore, should not deny force to any part of the will, but gather the sense equally of all its provisions.

The general plan of the will was to give children equal shares in the ultimate division of the estate. An exception to this is made in the case of two of his children, the one being excluded from direct participation in the estate, and the other receiving an increased provision on account of the circumstances that led to the exclusion of the former. Out of these exceptional circumstances the present question arises; and these provisions will be hereafter examined in detail. Apart from this case, which must be regarded as standing on exceptional grounds, strict equality, as between his children in the final division of his estate, was manifestly a controlling purpose.

Certain portions of the testator's real estate were specifically devised to each of his children intended to participate in the final division at a valuation fixed by the testator on each parcel. The value of the parcels, thus specifically devised, were to be charged to the respective children taking under such devises.

Provision was made for the wife of testator and certain special objects, and the residue of his estate was left in the hands of his executors to accumulate until twenty years after his death, when a final division was to take place.

The principles on which this division was to be made was to add to the residue remaining in the hands of his executors, after satisfying the other purposes of the will, the valuation of the real estate

specifically devised to children, and to divide the aggregate into as many parts as there were children, or the issue of children living entitled to participate in the final division, and from each part going to a particular child or the issue of a child to deduct the valuation fixed by the will for the specific devise to such child, and the remainder thereof to constitute such child's interest in such final distribution.

The several children taking under the will were to take life estates, with remainders to their issue. In the case of the death of a child without issue to take, the share of such child was to fall into the residue and be distributed among the remaining persons entitled to such residue on final distribution.

The testator, by a codicil, changed the time for final distribution from twenty years after his death to ten years thereafter. The remaining provisions of the will and codicil are not important to the understanding of the general nature of the dispositions intended by the testator, apart from the peculiar circumstances that affected two of his children, and to which attention will next be given.

For some reason not disclosed by the will, the testator did not intend that his son Isaac should directly receive any part of his estate. It will not be necessary to ascertain the precise motive that leads to this exclusion. It is enough that we find that it was not intended as a mark of displeasure, and that it may reasonably be ascribed to want of confidence in the ability of that son to make a judicious use of property intended for his support.

In the place of a direct provision for Isaac, the testator makes the following dispositions: "And whereas, from special reasons, my son Isaac will not receive any portion of my estate, and his sister Laura, having always extended to him much attention and kindness, I believe that it will be gratifying to him that I should make some extra provision for my daughter Laura; in consideration of such kindness and attention, I hereby give, devise and bequeath to my daughter Laura the same portion of my estate as would have been bequeathed to my son Isaac had this exception not been made." The will then goes on to devise specifically to Laura a house and lot "in consideration of her kindness to her brother Isaac, and to be charged against my daughter in the final distribution of my estate out of the portions which would have been bequeathed to my son Isaac at the sum of fifteen thousand dollars, ($15,000); and it is my will and desire that, in consideration of the bequest, my daughter Laura will continue to

extend to her brother the same kindness, to give him a comfortable support, pay all his expenses of clothing, boarding and lodging, doctors' bills, &c., while he lives single." Then follows provisions contingent upon the marriage of Isaac with the consent of his mother and his having children. These provisions have no direct bearing on the present question, as Isaac died during the lifetime of his father without having married. They have, however, an indirect bearing that will be considered hereafter.

Two observations are pertinent to the provisions just cited, namely, that Isaac was not intended to be among those children entitled to participate in the final division of the estate, and that Laura was intended so to participate to an extent greater than the remaining children so entitled to participate.

It is also noticeable that Laura, by the will, was intended to receive a specific devise of real estate, at a fixed valuation, on account of that portion of the provisions made for her on account of her relations to Isaac, to be charged in the final distribution precisely as she had a similar specific devise on account of the provisions made for her individually, in common with the other children, and similar to that which each of the others received, Isaac only excepted. This specific devise was revoked by the codicil.

It is contended by the respondents, who represent the devises other than those to Laura, that all that Laura could take under the devise of that which the testator describes as what would have been taken by Isaac but for the exception made in his case was what Isaac would have taken had the devise been made in terms to him, subject to all the conditions and limitations affecting alike the devises to the several children. In other words, had Isaac been put upon the same footing with the other children, the fact of his death without issue before the final division would have caused the estate devised to him to fall into the residue of the estate, in which case all entitled to come upon the residue would be equally so entitled.

What the respondents contend for is, in effect, that Laura is not to be regarded as a devisee as it regards that part of the estate coming to her through her relations to Isaac, but that the devise is to be treated as if made to Isaac, so far as it concerns the application of the conditions and limitations imposed by the will in the case of the contingency of a child dying without issue before final

division of the estate. According to this view, the death of Isaac before that event destroyed an assumed life estate in him, and his failing to leave issue defeated the remainders intended for his children, consequently the life tenancy of Laura was destroyed, and all that part of the estate passed into the residue and must be distributed accordingly. According to this view, Laura would participate in the residue on the footing of equality with the other children.

It is not denied that the will intended that Laura should enjoy the devise thus assumed to be made in effect to Isaac, subject to the injunctions of the will for the maintenance of Isaac. The respondents' proposition that the codicil revokes this intended devise in its whole scope and effect demands notice in a different connection from the present.

The question thus raised is whether these provisions of the will, conferring what the testator regarded as Isaac's natural right on Laura, are to be regarded as constituting a direct devise to Laura, so that the conditions and limitations attached to devises are to operate on contingencies connected with the termination of her life and her leaving issue without encumbering her interest with other contingencies connected with the life of Isaac.

The will in terms makes Laura the devisee of the legal estates, whatever trust may affect it in behalf of Isaac, and whatever may be the nature and extent of that legal interest. The contingencies of dying with or without children, on their face, relate to children taking estates under the will. The like life estate taken is made to depend on the life of the taker, and not on any other person, and issue to take by way of remainder are the issue of the parent taking a life estate in all cases except that of Isaac's children.

The respondent must, in order to establish their construction, make good the propositions that there is matter in the will sufficient to defeat the natural and primary sense of the terms employed and to substitute another in its place.

It will not be necessary to consider whether the sense and construction contended for by the respondents can be made to comport reasonably with the terms employed, unless, on examination, we find something in the will making it clear that the testator's intent will be defeated if the expressions employed by him are taken in the natural and ordinary sense.

The respondents point to the rule of equality among children as

evincing the intention of the testator, and claim that such equality would be destroyed if Laura could take, nothwithstanding Isaac's death without issue. It must be conceded that the testator did intend, as a general rule, to deal with his children on terms of equality. It is equally clear that he intended to make the exception to this rule in the case of Isaac and Laura. To account for his departure from what constituted the general idea of his will, he assigns, with sufficient clearness, his motives for so doing. He cannot allow Isaac to participate directly and on the footing of the other children, but gives effect to the assumed, a possibly known, desire of Isaac that Laura should receive special and "extra" provision on account of her kindness and affection for him. It is upon Laura, as Isaac's benefactor, that his bounty is bestowed. All this makes it perfectly clear that the testator intentionally created an exception to the general rule of equality on grounds that he regarded as sufficient. To use the general rule so as to destroy the exception is to violate the intentions of the testator.

But the respondents contend that the exception was only intended to be allowed while Isaac was living, and that his death destroyed the force of the motive that led to the favor bestowed upon Laura.

This is not sustained by the text of the will. In the first place, the motive of kindness in the past is placed in the most conspicuous light in the statement by the testator of the grounds of his extraordinary provisions for Laura.

The injunction that she shall provide for the maintenance of Isaac was not intended to deprive her of a beneficial interest in the devise. In the devise to Laura, on account of Isaac, the death of Isaac is in terms contemplated, and an intention clearly manifested that Laura should enjoy, from and after that event, the entire estate so devised if Isaac should leave neither wife nor child. The devise thus affords the clearest evidence not only that it was not the intention of the testator that his bounty to Laura should cease with Isaac's death, but that if Isaac died without wife or child that Laura should enjoy the devise to her after the death of Isaac. It is clear that the general intention, contemplating equality as among his children, is in harmony with the particular disposition made in behalf of Laura in excess of what equality would confer, so that the logical connection of his mind can be traced through both; there is, therefore, no ground here to disturb the direct sense of the terms which he has employed to indicate the provision intended for Laura.

Another ground presented by the respondents has less relation to the presumed intention of the testator and more to the force and effect of the terms by which he describes the subject matter of the devise to Laura. They contend that the subject matter of the devise to Laura is what Isaac might have taken had he lived until the time when final division of the estate was to be made.

It must not be forgotten that had Isaac lived until the final division, he would have taken nothing, for nothing was devised for him.

While it may be conceded that Laura should not take more than Isaac would have taken had the devise been to him instead of her, still it is clear that Laura ought not to take less under the devise to her than Isaac would have taken had the devise been made to him. The language of the will to be first considered in this connection is as follows: "I hereby give, devise and bequeath to my daughter Laura the same portion of my estate as would have been bequeathed to my son Isaac had this exception not been made." Considering this clause as furnishing a measure of the subject of this devise to Laura, what is the nature of that measure, and how must it be applied? In the first place, it was a measure according to something existing at the time the testator made his will. There is no evidence of any intention or idea that events thereafter to occur were to constitute the measure of what was to go to Laura under the devise. He gives that which "would have been," but for the special circumstances of the case, "bequeathed" to Isaac—not that which might on certain contingencies be enjoyed by Isaac had the devise been made to him. Suppose, then, that the special circumstances had not existed, what would have been bequeathed to Isaac?

The general rule of equality as among children would then have had no exception, and Isaac would have taken the one-eighth part of the estate, subject to certain contingencies. Laura takes that interest, subject to the same contingencies that would have affected Isaac, namely, an estate for the life of the taker, and a remainder to her issue if any she have. But respondents contend that Laura only takes an interest for her own life in a life estate terminable on the death of Isaac without issue. But such an estate is not what Isaac would have taken had the devise been to him, but something very much inferior in both legal estimation and pecuniary value.

This construction of the respondents becomes still more perplex-

ing and unsatisfactory if we attempt to state the nature of the remainder intended for the children of Laura surviving her. In a word, that which he gives to Laura is a child's portion in his estate, in addition to her own, that remained undisposed of in consequence of the exception affecting Isaac; but upon the same conditions as that she took on equal terms with her brothers and sisters, namely, a life estate for her own life, remainder to her issue.

It is necessary to refer to the language of the clause relating to final division in order to understand fully the position of the respondents as to the nature and extent of the interest that the testator intended for Laura. The language is as follows: "All the rest and residue of my estate, both real and personal, of whatsoever character and kind, I leave in trust of my executors hereinafter named in this my last will and testament, for the benefit of my children and grand-children, the interest of all such property to be invested in safe securities and kept together until twenty (20) years after my death; then, at that time, it is my will and devise that the final division of my estate shall take place according to the tenor and meaning of this my last will among my surviving children; the child or children of either of my children who may have departed this life previous to this distribution standing in the place of such deceased parent."

This clause certainly declares that those intended to take in the final division are surviving children and the descendants of such as die before that event occurs. Does it go farther and fix, independently of the preceding portions of the will, that *all* surviving children, with the issue of those heretofore deceased, shall take *equally*, whether representing individually or collectively a child's portion? The language cited answers this inquiry by referring the question as to who among the class named shall take and what shall be their relative right of participation to the intention expressed in all parts of the will taken together as a whole. The force thus given to all parts of the will confirms rather than destroys the exceptions as established in the case of Laura and Isaac.

The direction is two-fold: distribution must take place "among" surviving children and the issue of such as are then deceased, and it must be made according to the "tenor and meaning" of the whole will. Whatever inclusive power may be ascribed in the word "among" in other relations, here it must give way to the force

of an exception within the tenor and meaning of the will, though placed in a different part of that instrument, as effectually as if that exception was repeated and placed in immediate juxtaposition with the direction to distribute "among" surviving children.

It certainly was not either necessary or convenient to reiterate in this connection the complicated provisions relating to Laura, and indirectly to Isaac.

The respective persons intended to take in the final division had already been made certain, and it only remained to give directions for the final division that would authorize the executors to act. There is nothing in the language of the will last cited that throws any light upon the intentions of the testator as to the measure of the bounty intended Laura on Isaac's account. We come now to the language of the codicil to ascertain whether it has any bearing in defining the intentions of the testator as to the measure of Laura's interest. It says: "I do further direct that the division of my estate shall take place among my surviving children at the period of ten years after my death, instead of twenty years, as specified in my said will, and at such time the amounts devised to my children be first equalized, and the residue divided as therein directed." The words "amounts devised," as here used, refer to the respective shares of the children in the final distribution.

This is shown by the words that follow, viz.: "and the residue divided as therein directed." The residue clearly means the portion of the estate accumulated after the separation of those parts specifically devised and the payment of the debts, legacies, &c. That which is to be equalized is indicated by the will itself, namely, the advances made by the testator to the respective children on account of the fund ultimately devisable by means of specific devises valued by the testator for the purpose of such equalization. The direction in the codicil to "equalize" is a repetition of similar expressions in the body of the will, there applied to the mode of compensating on the final distribution for the differences in the pecuniary value of the various parcels specifically devised. While there is a reading of the codicil that harmonizes with the body of the will as this does, no other reading less harmonious is admissible.

The only additional clause of the codicil to be examined in this connection is that which declares a trust in regard to the interests conferred upon the children. The object of this clause was not to

redistribute the testator's bounty upon a plan inconsistent with that disclosed by his will, but to secure objects that were thought by the testator to be important as it regarded the holding by his children of the shares coming to them under his will. The opening language is: " I do further direct that the portions of my estate left to all my children shall be subject to the following," &c. Evidently the testator meant " *all* the portions of my estate left to my children." The transposition of the word " all," assumed by this reading, is of common occurrence in our language, where inexactly employed. Such a transposition does less violence to the text than would be done to the mind of the testator if it was assumed that he here intended to destroy the elaborate provisions of his will growing out of the peculiar situation and relations of Isaac and Laura, during the lifetime of Isaac, and without any intimation of a motive for so sudden and surprising a change of intention.

The respondents raise another point upon the language of the codicil that may be here considered. They contend that the first clause of the codicil revoking the specific devise to Laura was not to be charged as an advance upon that portion of the estate which she was to receive on account of her relations to Isaac and revoked in effect the entire devise to her. This position needs but brief notice.

The will contained a general devise entitling Laura to participate in the final division to the extent of a child's portion on Isaac's account, also a specific devise of realty, by way of anticipating such general devise. The revocation of the specific devise left the general devise in full force and operation.

It is further contended that Laura took as trustee for Isaac under the devise to her on account of Isaac. The correctness of this position need not be examined; for, assuming its truth, it does not follow that Laura's interest, after the death of Isaac, was diminished thereby. It is clear on the face of the will that the testator intended bounty to Laura by this devise, and not that she should act solely as trustee for Isaac. It is equally clear that such bounty embraced all that was to be derived from a child's portion over and above what might be required for the maintenance and comfort of Isaac and that which might remain after his death without issue. Such being the indisputable fact, the nature and extent of the beneficial interest intended for Isaac, during his lifetime, on the assumption of the existence of a trust,

cannot be made the measure of the legal estate, a beneficial interest that passed to Laura under the provisions of the will. This view deprives the fact of a trust for Isaac of any importance in determining what interest Laura took under the will.

, The decree must be so modified as to admit Laura to two one-eighth parts on the final division of the estate.

*Moses,* C. J., and *Wright,* A. J., concurred.